# Wilkinson's Estate.

*Will—Probate—Marriage—Legitimacy—Evidence.*

On a petition to set aside the probate of a will, the petitioner alleged that she was a daughter of the decedent entitled to participate in his estate. The marriage of the decedent and the petitioner's mother was denied. The only direct evidence of the marriage was that of an inmate of an old woman's home who did not know how old she was, but who testified in 1902, to a marriage between testator and petitioner's mother at some-time she could not remember, but assenting to a suggested date of 1857, 1858 or 1859, at a house where the witness was then living as an indentured servant.  She had not seen the testator since the marriage, and she professed to identify him by a photograph taken thirty odd years after she last saw him.  The alleged wife she had never seen before or since, and she identified her from a photograph (when taken not shown) "only by the way her hair is fixed and the earrings and the ugly mouth."  The witness did not remember the justice of the peace who performed the marriage ceremony.  She remembered the name of the owner of the house, and that some of his family were present at the wedding, "some in the garret and some down in the cellar."  Public records produced in evidence showed that the witness's apprenticeship had expired ten or eleven years prior to the date of the alleged marriage, and several members of the family referred to by the witness testified that they never knew the testator nor petitioner's mother, and that no such marriage ever took place in their house.  There was evidence that in 1864 the testator married another woman and lived with her as his wife until her death, and in the same year the petitioner's mother married another man.  There was no evidence of a divorce.  *Held,* that the evidence was insufficient to go to a jury on the question of the petitioner's legitimacy.

Argued Oct. 18, 1905.   Appeal, No. 25, Oct. T., 1905, by Emma T. Scott, from decree of O. C. Beaver Co., refusing an issue devisavit vel non in estate of James Wilkinson, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Petition to set aside the probate of a will.   Before WILSON, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree refusing an issue.

*S. L. Webb,* with him *W. A. McConnel,* for appellant.

*Agnew Hice* and *J. Rankin Martin,* for appellee, were not heard.

PER CURIAM, November 4, 1905 :

It may be conceded that there was enough testimony to go to a jury that the petitioner was a daughter of the testator, but the weight of the evidence was against her legitimacy. The marriage of her mother and her putative father was not only not proved but was clearly disproved. The only direct evidence of the marriage was the testimony of a woman from the Old Woman's Home in Covington, Kentucky, who did not know how old she was nor when she came to this country, but who testified in 1902 to a marriage between the testator, Wilkinson and the appellant's mother, Sarah Taylor, at some time she could not remember, but assented to a suggested date of 1857, 1858 or 1859, at the house of Mr. Steele in Chester county. The testator she had not seen since that date and she professed to identify him by a photograph taken thirty odd years after she last saw him. The alleged wife she had never seen before or since that one occasion, and she identified her from a photograph (when taken not shown) " only by the way her hair is fixed and the earrings and the ugly mouth." The witness could not remember the name of the squire who performed the marriage ceremony and the only name about which she was positive was that of the owner of the house, John D. Steele. Some of his family were present at this wedding, she said, " some in the garret, some down in the cellar."

This flimsy story might well be turned out of court without more, but it was met by evidence from the records of the superintendent of charities of Philadelphia that the witness Sarah Nicholson, whose maiden name was Sarah Hamm, was indentured to Mr. Steele in 1833, and her time having expired in 1847 she was not at his home at any time within ten or eleven years of the date of the alleged marriage of Wilkinson ; and by convincing testimony from several members of the Steele family that they never knew either the testator or Sarah Taylor, and no such marriage ever took place in their house.

There were declarations of the testator, and other collateral matters bearing on the principal fact, but it is a favorable view to the appellant to say that the inferences to be drawn from them lead both ways. Two facts, however, raise a presumption against the appellant that has great weight. The marriage was assumed to have taken place in 1857, 1858 or 1859, but it was shown that in 1864 the testator married another woman and lived with her as his wife until her death, and in the same year Sarah Taylor married another man. There was no evidence of a divorce and the presumption is strong against the commission of bigamy by both parties.

On the question of testamentary capacity the testimony of the lawyer who drew the will is convincing. But as the petition wholly failed to show any standing to contest there is no need to discuss that branch of the case.

The decree is affirmed with costs to be paid by appellant.